1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JESUS ANDRES LOPEZ,                    No.  2:15-cv-1756-KJM-EFB P

12                    Petitioner,

13         vs.                              FINDINGS AND RECOMMENDATIONS

14   PEOPLE OF THE STATE OF
     CALIFORNIA
15
                     Respondent.
16

17

18         Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

20   entered against him on June 19, 2012 in the Superior Court of Colusa County on charges of: (1)

21   one count of orally copulating a child under fourteen; (2) two counts of committing lewd acts on a

22   child under the age of fourteen; (3) one count of sodomizing a child under the age of fourteen;

23   (4) six[1] counts of exhibiting harmful matter to a minor; (5) one count of orally copulating a child

24   under sixteen; (6) one count orally copulating a disabled person; (7) two counts of committing

25   lewd acts on a child under sixteen; (8) one count sodomizing a child under sixteen; and (9) one

26

27         [1] Two of these counts were subsequently reversed by the California Third District Court
     of Appeal.  *People v. Lopez*, No. C072072, 2014 WL 5796683, at *8 (Cal. Ct. App. Nov. 7,
28   2014), review denied (Jan. 14, 2015).

                                               1

count of sodomizing a disabled person. He seeks federal habeas relief on the following grounds: (1) prosecutorial misconduct resulted in an unfair trial; (2) his convictions are not supported by sufficient evidence; and (3) his due process rights were violated by the trial court's decision to admit evidence of a prior, uncharged sex offense. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following procedural and factual summary:

> Defendant Jesus Andres Lopez was convicted of 16 counts of various sex crimes against seven boys. He asserts reversible error on the following grounds:
>
> 1. The prosecutor committed misconduct in his rebuttal jury argument;
>
> 2. Insufficient evidence supports his six convictions of exhibiting harmful matter to a minor;
>
> 3. The trial court erred by admitting evidence of a prior uncharged sex crime;
>
> 4. The trial court imposed unauthorized restitution and parole revocation fines; and
>
> 5. The abstract of judgment incorrectly records his presentence custody credits.
>
> In addition, the Attorney General asks us to modify the judgment to impose sentences on subordinate consecutive terms in the correct manner and to order the abstract of judgment be similarly corrected. Defendant agrees with the Attorney General's requests.
>
> We reverse the judgment as to two of the convictions for exhibiting harmful matter; we modify the judgment to impose the correct restitution and parole revocation fines and sentences on the subordinate consecutive terms; and we order the abstract of judgment amended to record defendant's sentencing, restitution fines, and presentence custody credit accurately. In all other respects, we affirm the judgment.

FACTS

We need not recite all of the sordid facts in order to address defendant's contentions. Suffice it to say, defendant, who turned 39 years old three days after trial in 2012, was convicted of committing the following crimes against seven boys in 2010 and 2011:

One count of orally copulating a child under the age of 14 (Pen.Code, § 288a, subd. (c)(1))1 (count I);

Two counts of committing lewd acts on a child under the age of 14 (§ 288, subd. (a)) (counts II and XVII);

One count of sodomizing a child under the age of 14 (§ 286, subd. (c)(1)) (count III);

Six counts of exhibiting harmful matter to a minor (§ 288.2, subd. (a)) (counts IV, VIII, XVI, XVIII, XIX, and XX);

One count of orally copulating a child under the age of 16 (§ 288a, subd. (b)(2)) (count IX);

One count of orally copulating a disabled person (§ 288a, subd. (g)) (count X);

Two counts of committing lewd acts on a child under the age of 16 (§ 288, subd. (c)(1)) (counts XI and XIV);

One count of sodomizing a child under the age of 16 (§ 286, subd. (b)(2)) (count XII); and

One count of sodomizing a disabled person (§ 286, subd. (g)) (count XIII).

The jury also found true a multiple victim enhancement under section 667.61, subdivisions (b), (c)(8), and (e)(4), as to counts II and XVII.

The trial court sentenced defendant to state prison for an indeterminate term of 30 years to life, plus 19 years four months, calculated as follows: Consecutive 15 years to life terms on counts II and XVII (lewd acts on a child under 14) pursuant to the multiple victim enhancement; a consecutive upper term of eight years on count III (sodomy on a child under 14); consecutive middle terms of six years stayed except for one-third of the middle term sentences of two years on counts I, X, and XIII (oral copulation of a child under 14, oral copulation of a disabled person, and sodomy of a disabled person); and consecutive middle terms of two years stayed except for one-third of the middle term sentences of eight months on counts IV, VIII, XVI, XVIII, XIX, and XX (exhibiting harmful matter to a minor) and counts XI and XIV (lewd acts on a child under 16).

3

The court also imposed and stayed under section 654 the middle term sentences of two years on counts IX and XII (oral copulation of a child under 16 and sodomy of a child under 16).

The court imposed restitution and parole revocation fines of $100,000 each. It also granted defendant a total of 499 days of custody credit; 434 days for actual custody and 65 days for worktime credits.

*People v. Lopez*, No. C072072, 2014 WL 5796683, at *1-2 (Cal. Ct. App. Nov. 7, 2014), *review denied* (Jan. 14, 2015).

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34, (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at

4

859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.*  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

   A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

---

[2]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether

1  a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no

2  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

3  reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

4       A summary denial is presumed to be a denial on the merits of the petitioner's claims.

5  *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze

6  just what the state court did when it issued a summary denial, the federal court must review the

7  state court record to determine whether there was any "reasonable basis for the state court to deny

8  relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could

9  have supported, the state court's decision; and then it must ask whether it is possible fairminded

10  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

11  decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate

12  that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d

13  925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

14       When it is clear, however, that a state court has not reached the merits of a petitioner's

15  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

16  habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

17  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

18  **III. Petitioner's Claims**

19       **A. Prosecutorial Misconduct**

20       The prosecutor, by way of his rebuttal closing argument, stated that the defense had failed

21  to offer a reasonable explanation as to why the victims would choose to lie about the crimes

22  perpetrated against them. The petitioner, who had staked his defense on a theory that the victims

23  were lying, argues that the prosecutor's comment imposed an unwarranted burden of proof on

24  him. The Court of Appeal rejected this argument:

25       Defendant contends the prosecutor committed misconduct in his rebuttal
         closing argument by stating the defense, whose theory was the victims
26       were lying, had not introduced a reasonable explanation as to why the
         victims would lie. Defendant asserts the comment imposed on him a
27       burden of proof. We conclude defendant has forfeited this argument. If we
         considered the argument on its merits, we would conclude the statement
28

was merely a comment on the state of the evidence and was not misconduct.

## A. Additional background information

Defendant's trial theory was that the victims lied. In closing argument, defense counsel referenced a letter written by one of the victims, K.S. Counsel argued another victim, Anthony, learned of the molestations by reading that letter. Counsel called the letter a "smoking gun" that contaminated the case and created reasonable doubt.

In his rebuttal argument, the prosecutor spoke of the facts on which all parties agreed. Defendant, a man in his thirty's, hung out with young boys at his house. Boys spent the night there in defendant's bedroom. In his bedroom, defendant kept a rubber vagina, a bag of condoms, lubricant, and also a bowl of candy on the bed's headboard. To get to the candy, boys had to go onto the bed, and defendant would invite them to do so.

The dialogue continued as follows:

"[PROSECUTOR:] What else? We have seven boys come in, into this courtroom, seven, and they tell you that in that room they're watching porn. The Defendant is showing them porn. So that's changing everything to something different and sexual. It's not just weird that he has them spend the night. Now there's something sexual going on in there. Five of those boys tell you they were molested.... Five kids tell you that they were molested in there. And what's the explanation for all of this? Why all these kids would lie?

"Defense Counsel says there's a smoking gun of a note written by [K.S.] So we're supposed to believe that these kids saw a note, and because they read that note are willing to tell people, come in here and say that they had sex with a man. Is that believable? The question is reasonable doubt. Is it reasonable that seven boys, who we know were sleeping in his bedroom or spending time with him, would just make up lies for no reason? What were we told? Defense had an opportunity to explain something to you.

"[DEFENSE COUNSEL]: Judge, I'm going to object. This is rebuttal.

"THE COURT: Objection is sustained. It is not a rebuttal comment. [¶] You may go into your next area.

"[PROSECUTOR]: Defense never provided you with an explanation.

"[DEFENSE COUNSEL]: Same objection, Judge.

"THE COURT: Objection will be sustained. It is a valid objection. Rebuttal must be made to comments.

8

"[PROSECUTOR]: Is it reasonable to believe that these boys lied? Why did they lie? To believe that they're lying, it must be reasonable to believe it, and something to be reasonable needs an explanation. You must know why you believe it. You can't just believe it. Why? And in detail, different details.... Why did it happen? Why would they lie? The fact is, they didn't lie." No objection was made to this part of counsel's argument.

**B. Analysis**

Defendant asserts the prosecutor, by stating the defense had an opportunity to explain something to the jury, improperly shifted the burden of proof to the defense to explain why the victims would lie.

Defendant has forfeited this claim on appeal. " '[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]' [Citation.]" (*People v. Stanley* (2006) 39 Cal.4th 913, 952, italics added.) At trial, defense counsel did not request an admonition to the jury when he objected to the prosecutor's argument, and he objected on grounds of improper rebuttal, not burden shifting. The argument is thus forfeited.

Defendant asserts for the first time in his reply brief that should we conclude his claim of prosecutorial misconduct is forfeited, we should review the matter for ineffective assistance of counsel. By failing to raise a claim of ineffective assistance of counsel in his opening brief, defendant has forfeited that contention as well. Arguments raised for the first time in a reply brief may be deemed forfeited absent a showing of good cause. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10.) Defendant makes no showing as to why he should be permitted to raise his claim for ineffective assistance of counsel in his reply brief. Accordingly, the claim is deemed forfeited.

Even were we to consider defendant's claim of prosecutorial misconduct on the merits, we would conclude the prosecutor committed no error. For purposes of prosecutorial misconduct, "[a] distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1340.) The latter constitutes prosecutorial misconduct, but the former does not. The prosecutor's comment was of the former; a comment on the lack of evidence providing a reason for why the victims would lie.

"A prosecutor may comment on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses. [Citation.] So, too, may a prosecutor point out in final argument that

defense counsel have been silent in their argument on crucial factors in the evidence, and thus have, presumably, no explanation to offer for these factors." (*People v. Singleton* (1980) 112 Cal.App.3d 418, 423.)

By his comment, the prosecutor addressed the state of the evidence on the issue of reasonable doubt. In doing so, he did not impose on defendant any burden to establish reasonable doubt. He simply argued the jury could not reasonably rely upon the evidence defendant had submitted and had referenced in closing argument to find reasonable doubt. The prosecutor was free to make this argument.

Moreover, the jury was properly instructed on the presumption of innocence, the prosecution's burden to prove the crime beyond a reasonable doubt, and that attorney arguments were not evidence. We presume the jury followed those instructions, and thus we would conclude the prosecutor's argument did not constitute prosecutorial misconduct.

*Lopez*, 2014 WL 5796683, at *2-4. Petitioner raised this issue in a petition to the California Supreme Court which was summarily denied. Lodg. Doc. No. 11 (Petition for Review); Lodg. Doc. No. 12 (Order Denying Review).

### 1. **Applicable Legal Standards**

A habeas petition raising prosecutorial misconduct will not be granted unless the misconduct "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, (1982). As such, in deciding whether a prosecutor's remarks rendered a trial fundamentally unfair, those remarks must be weighed in the context of the entire proceeding. *Boyde v. California*, 494 U.S. 370, 385 (1990); *Darden v. Wainwright*, 477 U.S. 168, 179-182 (1986). Additionally, because "improvisation frequently results in syntax left imperfect and meaning less than crystal clear. . . . a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974). Lastly, even where prosecutorial misconduct gives rise to a due process violation, habeas relief is only

/////

10

warranted if that misconduct is prejudicial under the harmless error test established in *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993).

## 2. **Analysis**

As a preliminary matter, respondent argues, *inter alia*, that this claim should be dismissed as procedurally barred. ECF No. 31 at 21-22.[3] The court need not reach this question, however, as petitioner's prosecutorial misconduct claim is meritless and will be resolved on that basis. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (holding that judicial economy might favor resolving claims on grounds other than procedural bar if "the procedural bar issue involved complicated issues of state law"); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues . . . , so it may well make sense in some instances to proceed to the merits if the result will be the same.").

It is well settled that prosecutors are permitted to argue reasonable inferences from the evidence. *Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995); *see also United States v. Birges*, 723 F.2d 666, 672 (9th Cir. 1984) ("The prosecutor's interpretation of [the defense theory] as a "fabrication" is also well within the bounds of acceptable comment."). Here, the prosecutor emphasized what he perceived as a weakness in the defense theory of the case. Nothing in his comments explicitly referred to or articulated an additional burden for the defendant to meet. To the contrary, he referred to the proper standard of reasonable doubt and permissibly argued that any doubts as to the veracity of the victims were not reasonable in light of the evidence. Even if the prosecutor's comments could be interpreted as ambiguous or confusing, the court will not presume, absent some supportive evidence, either that he intended his remarks to raise a new burden for the defense to overcome or that the jury independently interpreted such a burden from those remarks. *See Donnelly*, 416 U.S. at 647. Indeed, the record reflects that the jury was instructed as to both the presumption of innocence and the prosecution's burden to prove guilt beyond a reasonable doubt. Lodg. Doc. No. 2 (Clerk's Transcript Vol. 2) at 290. And juries are presumed, absent evidence to the contrary, to follow their instructions. *Richardson v. Marsh*, 481

---

[3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

U.S. 200, 211 (1987). Finally, as respondent points out, the evidence used to convict petitioner was strong insofar as it featured testimony from multiple victims (Lodg. Doc. No. 4 (Reporter's Transcript Vol. II) at, e.g., 412 – 439, 440-464, 465-492) and his defense – that the victims were lying - was weak. *United States v. Young*, 470 U.S. 1, 19 (1985) (overwhelming evidence of guilt "eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations . . ."").

## B. Sufficiency of the Evidence

Next, petitioner contends that the evidence was not sufficient to sustain his convictions for exhibiting harmful matter to a minor. ECF No. 25 at 16. Two of these convictions (showing harmful matter to Chris and Ronald) were reversed by the Court of Appeal, but the remaining four (showing harmful matter to N.C., G.W., Anthony, and K.S.) were upheld. The Court of Appeal reasoned:

> Defendant was convicted of six counts of exhibiting harmful matter to a minor. Section 288.2 makes it a crime for an individual to knowingly exhibit to a minor any "harmful matter," as defined in Section 313, with the intent of seducing the minor to engage in sexual conduct. (§ 288.2, subds.(a), (c).) Defendant contends the evidence is insufficient to support these convictions because the prosecution failed to prove the material was "harmful matter" as defined in section 313; specifically, that it was "patently offensive" to an adult. We conclude sufficient evidence supports four of the six convictions.

> **Additional background information**

> We first review the victims' testimony concerning what defendant showed them.

> N.C. (count XX), 14 years old at trial, met defendant when he was 12. Defendant showed him and four other victims "porn" in defendant's bedroom on a laptop computer from a Web site named Porn Hub, and from another Web site which had the word "hamster" in its name. The porn was "guy on girl" and "boy on boy;" they were "having sex" in both instances.

> N.C. also testified that defendant showed him a cell phone video of another of defendant's victims, J.B., masturbating. Expert testimony at trial established J.B. suffered from autism and mild mental retardation, and he did not have the ability or understanding to consent to sex. Watching the

cell phone video of J.B., N.C. heard J.B.'s and defendant's voices on the video. J.B. told defendant to get out of there because he was "doing his own thing."

G.W. (count XVIII), 14 years old at trial, met defendant when he was 11 or 12. Defendant showed him and three other boys "porno" in defendant's bedroom. Defendant always locked his bedroom door when he showed pornography to the boys. Defendant would show it on "DVD, computer, Internet." The porn was videos of "boys on girls and boys on boys. Like Asian boys on boys." The videos of boys on girls and the Asian boys on boys showed them having anal sex. The Web sites were named something like "X and XX porn."

Defendant also showed G.W. a video from his cell phone that depicted J.B. masturbating. G.W. could hear defendant's voice on the video telling J.B. to "keep going." From the video, it appeared defendant was watching J.B. and telling him to "keep going."

Ronald (count XIX), 12 years old at trial, met defendant two years before trial. Defendant showed Ronald and two to four other boys "porn" on his television and on a computer. Defendant would lock his bedroom door when he showed the videos to Ronald. The porn was "a guy and a girl."

Anthony (count VIII) was 14 years old at the time of trial. He watched "porn" on a computer in defendant's bedroom. The materials were on Web sites named X Hamster and Porn Hub. Anthony said he saw in the porn videos "very disturbing things," "girl on girl and guy on girl." Regarding the "guy on girl" video, Anthony saw the guy insert his penis in the girl's vagina.

K.S. (count IV), 14 years old at trial, was about 12 years old when he met defendant. Defendant showed "porn" to K.S. in his bedroom on a computer. Defendant would show the porn either to K.S. alone or to K.S. and other boys. He would lock his bedroom door when he showed the porn. The porn was from a Web site named X Hamster. K.S. saw "girl on girl, guy on guy," and "guy on woman." The "guy on woman" were "having sex." The girl on girl were "touching each other," and the guy on guy "were fucking each other."

Chris (count XVI), 16 years old at trial, was 14 when he met defendant. Defendant showed Chris "adult clips" on his laptop and his television while Chris was in his bedroom. The clips on television were from VHS tapes. One tape depicted a "girl and a guy having sex." The clips on the computer were from the X Hamster Web site.

In addition to introducing the testimony of the victims, the prosecution introduced the testimony of Cindy DeWoody, a child abuse sexual assault investigator with the District Attorney's office. DeWoody viewed the Porn

Hub and X Hamster Web sites. She testified a person could view any kind of pornography at these Web sites. She saw "[g]ay porn, lesbian porn, elder porn, if you're into the elderly. Everything from hard-core porn with force, mother-in-law relationships, threesomes. You name it, you were able to access it." She explained how the sites worked: "Each of these porn sites had categories like a menu, and you could click on the categories, and it would take you to numerous icons of different videos. All you had to do was click on that icon, and the video immediately popped up, and you watched it."

DeWoody testified the videos on the Porn Hub and X Hamster Web sites were much more explicit than pornography depicted in Playboy or an R-rated movie. In these videos, "you are seeing everything, and it's action. Everything from masturbation to anal sex, oral copulation, intercourse. It's all there and it's all in action." When asked if there was any sort of artistic value to what she saw, DeWoody said, "No artwork that I know anybody would have."

**Analysis**

We turn to determine whether sufficient evidence supports all six of the convictions for exhibiting harmful matter to a minor. Section 313 defines "'[h]armful matter' " as "matter, [ (1) ] taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and [ (2) ] is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and [ (3) ] which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors." (§ 313, subd. (a).) This definition "essentially 'tracks' the three-prong test for obscenity articulated by the United States Supreme Court in *Miller v. California* (1973) 413 U.S. 15 [37 L.Ed.2d 419]," adding that the lack of serious artistic, political or scientific value must be evaluated with regard to minors. (*People v. Dyke* (2009) 172 Cal.App.4th 1377, 1382–1383 (*Dyke* ).) "As to the first two prongs of the test for harmful matter, nothing in section 313 indicates that the 'average person' applying 'contemporary statewide standards' is anything other than an average adult applying adult standards, or that the determination of whether sexual conduct is depicted or described in a patently offensive way should be made using anything but adult standards." (*Dyke*, supra, at p. 1383, italics & fn. omitted.)

 "[I]n order to determine whether a portrayal of sex is patently offensive to the average adult, '[a] reviewing court must, of necessity, look at the context of the material, as well as its content.' [Citation.]" (*Dyke*, supra, 172 Cal.App.4th at p. 1385.) "[T]he question of what is "'patently offensive" ' under the community standard obscenity test is essentially a question of fact. [Citation.]" (*Id*. at p. 1384.)

14

Judicial decisions have defined the "patently offensive" prong under sections 288.2 and 313 to prohibit the exhibition of hard-core pornography to a minor, and, to affirm a conviction under section 288.2, have required a sufficient factual showing for the fact finder to determine from the exhibited material's content and context that the material was hard-core pornography. In *Dyke*, the 16–year–old minor testified that, while she was at the house of a friend, the defendant, who was her friend's father, displayed what she referred to as " 'pornography' " on the television while flipping through the channels. The minor remembered seeing a naked woman dancing for somewhere between one and eight minutes and, for around 45 seconds, the upper bodies of a naked man and woman who were " 'having sex' " with the woman "on top." The defendant stated to the minor: " ' "I shouldn't have this on because then you will have funny dreams and feel funny." ' " After the minor went to bed, defendant came in, rubbed her breast, kissed her mouth and asked her if she was "horny." In addition to being convicted of section 288.2, subdivision (a), the defendant was found guilty of misdemeanor sexual battery. (*Dyke*, supra, 172 Cal.App.4th at pp. 1380–1381, 1385.)

The appellate court held the evidence was insufficient to establish that the television images constituted "harmful matter" for purposes of section 288.2, subdivision (a), noting that "nudity alone" and "portrayals of sexual activity" are not per se obscene, even as to minors and "even if they may be characterized as 'dismally unpleasant, uncouth, and tawdry.' [Citation.]" (*Dyke*, supra, 172 Cal.App.4th at pp. 1384–1385.) The court cited United States Supreme Court authority stating: " '[A]n essential First Amendment rule [is]: The artistic merit of a work does not depend on the presence of a single explicit scene. [Citation.]' " (*Id.* at p. 1386.) The court observed that, "in order to determine whether a portrayal of sex is patently offensive to the average adult, '[a] reviewing court must, of necessity, look at the context of the material, as well as its content' [citation]" and the record before it was missing "any context" from which it could be determined whether what was depicted was patently offensive to the average adult. (*Id.* at p. 1385.) The court concluded that, "[w]ithout more, neither we nor the jury are permitted to presume that such content [a nude woman dancing and a naked couple having sex, shown from the waist up] is patently offensive to the average adult, applying statewide community standards." (Ibid.) The court found the minor's reference to " 'pornography' " equally lacking in evidentiary weight without any testimony "as to what she meant by that term, or how broadly it may have been intended." (Id. at p. 1384, fn. 5; see also *People v. Powell* (2011) 194 Cal.App.4th 1268, 1291 (*Powell* ).) It noted additionally: "[I]t is not the minor's opinion that matters; the sexual conduct depicted must be judged patently offensive under a single contemporary statewide standard." (*Dyke*, supra, 172 Cal.App.4th at p. 1384, fn. 5.)

In *Powell*, *supra*, 194 Cal.App.4th 1268, the defendant was convicted of raping his daughter (who was 10 years old or younger) and exposing her to

15

pornographic movies. (*Id*. at p. 1274.) With regard to the movies she was shown, the victim testified they depicted " 'girls and boys' " with their penises and vaginas exposed, and they would engage in sexual activity. (*Id*. at pp. 1284–1286.) She also described the man in these movies uncovering his penis and " 'put[ting] his penis in the vagina,' " but the penis was obscured by pixelization. (*Id*. at p. 1286.) Then they would have sex, which she could see and hear them perform. (*Ibid*.)

In evaluating the sufficiency of the evidence as to section 288.2, the appellate court noted that "nudity or depictions of sexual intercourse or other sexual activity do not, by themselves, make a movie obscene." (*Powell*, supra, 194 Cal.App.4th at p. 1291.) The court noted that in *Miller*, the Supreme Court held " 'no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct specifically defined by the regulating state law, as written or construed.' [Citation.]" (*Powell*, supra, 194 Cal.App.4th at p. 1293.) The *Powell* court observed: "Miller makes plain that 'hard-core pornography is synonymous with obscene pornography.' [Citation.] 'Based on *Miller*, the law distinguishes between hard-core pornography and soft-core pornography, which involves depictions of nudity and limited and simulated sexual conduct. Because it is not as graphic or explicit as hard-core pornography, soft-core pornography is protected under the First Amendment.' [Citation.]" (*Powell*, supra, at p. 1293.)

"'Softcore (or soft porn) is a form of pornography, either video or nude glamour photography, that is less explicit than hardcore material in depicting or describing sexual behavior. Softcore does not depict explicit sexual contact, but ranges from nudity to simulated intercourse. While both softcore and hardcore feature sexual situations with the intention of arousing the viewer, the key difference is that softcore does not clearly show aroused genitalia (including masturbation), ejaculation, or penetration (vaginal, anal and/or oral).' [Citation.] 'In contrast to hard-core pornography, which depicts full male nudity and actual sex, soft-core sex is more simulated than real, and the films usually attempt to have coherent storylines and dialogue.' [Citation.]" (*Powell*, supra, at p. 1294.)

The appellate court in *Powell* concluded that, for the most part, the victim's description of the movies she was shown was insufficient to determine whether the material was "obscene." (*Powell*, supra, at p. 1293.) However, the victim's description of seeing a movie depicting people engaged in sexual activity in which " 'some of their men parts and women parts weren't blocked,' " and "[p]enises, breasts, and vaginas [were] featured in lewd displays as the actors 'did it,' i.e., engaged in sexual activity and not just kissing" established she had been shown hard-core pornography and was sufficient to satisfy the "harmful matter" element of the offense. (*Id*. at p. 1295.)

In the present matter, the victims' testimony, the investigator's testimony, and the reasonable inferences drawn from those statements, make it clear that what defendant showed the victims was hard-core pornography, except as to Ronald and Chris. Defendant showed N.C. and G.W. a cell phone video of a young man who suffers from autism and mental retardation masturbating. Defendant apparently participated in making the video, as he is heard in the background encouraging the young man to go on. This was hard core pornography in one of its vilest forms, exploiting a disabled minor who lacked the mental acuity to consent to sex solely for defendant's prurient interest.

Defendant also showed G.W. videos from Web sites that depicted men having anal sex. G.W. would not have been able to say what the videos depicted unless he had actually seen the performance of anal sex while viewing them. These videos constituted hard-core pornography.

Sufficient evidence also supports the jury's findings that defendant showed hard-core pornography to Anthony and K.S. From the X Hamster and Porn Hub Web sites, defendant showed Anthony a video that depicted a man inserting his penis into a woman's vagina. From the X Hamster Web site, defendant showed K.S. videos that depicted couples "having sex" and "fucking each other." These videos were accessed through Web sites whose function was to exhibit hard-core pornography. It was thus reasonable for the jury to infer from the victims' testimony in light of the investigator's description of the Web sites that the videos defendant showed Anthony and K.S. were hard-core pornography.

The evidence supporting defendant's convictions of showing harmful matter to Ronald and Chris, however, is insufficient. Ronald described the videos he saw as "porn" involving "a guy and a girl," but he did not explain the source or context of the videos he saw. Chris described the videos he saw as "adult clips." One was from a VHS tape that depicted a "girl and a guy having sex." Other clips were from the X Hamster Web site, but Chris did not describe what he saw in those clips. The testimony of these two victims does not provide sufficient descriptions of content and context from which the jury could infer the videos defendant showed them were hard-core pornography.

We conclude there is sufficient evidence to support defendant's convictions under section 288.2 for showing harmful matter to N.C., G.W., Anthony, and K.S. (counts XX, XVIII, VIII, and IV), but not for showing harmful matter to Chris and Ronald (counts XVI and XIX).

*Lopez*, 2014 WL 5796683, at *4–8. Petitioner raised his sufficiency of evidence claims in a petition for review to the California Supreme Court which was summarily rejected. Lodg. Doc. No. 11 (Petition for Review); Lodg. Doc. No. 12 (Order Denying Review).

17

1          **1.  <u>Applicable Legal Standards</u>**

2          The Due Process Clause "protects the accused against conviction except upon proof

3   beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

4   charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

5   conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

6   rational trier of fact could have found the essential elements of the crime beyond a reasonable

7   doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under *Jackson*

8   is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable

9   doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).

10  Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient

11  evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565

12  U.S. 1,2 (2011).  Sufficiency of the evidence claims in federal habeas proceedings must be

13  measured with reference to substantive elements of the criminal offense as defined by state law.

14  *Jackson*, 443 U.S. at 324 n.16.

15         In conducting federal habeas review of a claim of insufficient evidence, "all evidence

16  must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d

17  1112, 1115 (9th Cir. 2011).  "*Jackson* leaves juries broad discretion in deciding what inferences

18  to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

19  inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012)

20  (per curiam ) (citation omitted).  "'Circumstantial evidence and inferences drawn from it may be

21  sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation

22  omitted).

23         If the record supports conflicting inferences, the reviewing court "must presume — even

24  if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts

25  in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120,

26  133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326).  In evaluating the evidence presented

27  /////

28  /////

at trial, this court may not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Instead, as noted above, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319.

Juries have broad discretion in deciding what inferences to draw from the evidence presented at trial. This court may not "impinge[ ] on the jury's role as factfinder," or engage in "fine-grained factual parsing." *Coleman*, 566 U.S. at 655. As the Ninth Circuit has explained, "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). Under *Jackson*, the Court need not find that the conclusion of guilt was compelled, only that it rationally could have been reached. *Drayden v. White*, 232 F.3d 704, 709-10 (9th Cir. 2000).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Because this case is governed by the Anti-Terrorism and Effective Death Penalty Act, this court owes a "double dose of deference" to the decision of the state court. *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th Cir. 2011)). *See also Coleman*, 565 U.S. at 651 ("*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."); *Kyzar v. Ryan*, 780 F.3d 940, 943 (9th Cir. 2015) (same).

### 2. **Analysis**

Section 288.2 of the California Penal Code prohibits exhibiting "harmful matter" to a minor with "the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of the minor . . ." Cal. Pen. Code § 288.2, subd. (a), (c). 'Harmful matter' is, per section 313 of the code, defined as:

> [M]atter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

Cal. Pen. Code § 313 (a). The Court of Appeal, as previously indicated, found that there was sufficient evidence to uphold four[4] convictions for exhibiting harmful matter to four (N.C., G.W., Anthony, and K.S.) of the six victims. It noted that testimony from the both the victims and investigators indicated that: (1) petitioner showed N.C. and G.W. video of an autistic youth masturbating; (2) petitioner showed G.W. video of men having anal sex; (3) petitioner showed Anthony a video of vaginal intercourse from a hard-core pornographic website; and (4) petitioner showed K.S. videos of couples engaging in intercourse on a hard-core pornographic website. *Lopez*, 2014 WL 5796683, at *7-8. This testimony is clearly presented in the record. Lodg. Doc. No. 4 (Reporter's Transcript Vol. II) at 451-52, 472-73, 519, 566-67. For his part, petitioner has only vaguely alleged that the evidence is insufficient. ECF No. 25 at 16. He has not explained how the Court of Appeal's rejection of his challenge to the sufficiency of the evidence was contrary to, or an unreasonable application of, any clearly established Federal Law. It bears reiterating that, under *Jackson*, the court need conclude only that the jury could have rationally reached its verdict. Here, the record simply does not support petitioner's conclusory contention that a finding in his favor on these counts was the only reasonable outcome.

### C. Admission of Prior, Uncharged Sex Offense

Finally, petitioner contends that the admission of prior, uncharged sex offenses violated his due process rights.[5] ECF No. 25 at 17-18. The Court of Appeal rejected this claim:

> The trial court admitted evidence under Evidence Code section 1108 of a prior uncharged sex offense committed by defendant. Defendant contends the court abused its discretion by admitting the evidence because, under Evidence Code section 352, the evidence was more prejudicial than probative. He asserts the evidence was more prejudicial because it concerned an event that was not in close proximity to the charged offenses, was not corroborated, and did not result in conviction or punishment. He

---

[4] As noted *supra*, two of these convictions were overturned by the Court of Appeal. Accordingly, this court does not reach them. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

[5] Petitioner also alleges that his state due process rights were violated. ECF No. 25 at 17-18. These claims are not cognizable, however. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

claims admitting the evidence violated his constitutional rights to due process. We disagree with his contentions. The trial court did not abuse its discretion by admitting the evidence.

**Additional background information**

Defendant moved in limine to exclude evidence offered under Evidence Code section 1108, arguing the evidence was unduly prejudicial under Evidence Code section 352. The prosecution opposed. It sought to introduce the testimony of Sergio A. concerning an uncharged sex act committed by defendant against him some six years before defendant committed the acts at issue here, and it argued the evidence was not unduly prejudicial.

The trial court denied plaintiff's motion. It found the testimony to be highly probative and no more inflammatory than the testimony to be introduced by the other victims. It found the testimony was not stale, and that it would not distract the jury or consume an undue amount of time.

Sergio A. testified at trial. At that time, he was 19 years old. He became acquainted with defendant, his mother's friend, in about 2004 at the age of 11. Defendant gave Sergio A. money and gifts. They would smoke marijuana and watch pornography together. Defendant told Sergio A. he was "really cute." He occasionally would smack Sergio A.'s buttocks, or would give him very long hugs. These statements and actions made Sergio A. uncomfortable. Defendant gave Sergio A. marijuana and alcohol.

One night, Sergio A. was falling asleep on his bed lying on his stomach. Defendant sat next to him and massaged his back. Defendant was saying something, but Sergio A. was "half asleep." Then defendant pulled down Sergio A.'s pants. Sergio A. turned around quickly to look at defendant, and saw that defendant had exposed his penis. Sergio A. asked defendant what he was doing, but defendant tried "to play it off" and denied doing anything. Sergio A. then called out for his uncle. On cross-examination, Sergio A. stated defendant had pulled his pants down to his "butt cheek," was "massaging [his] back," and "then he tried to touch me with his freakin' wiener." Defendant testified he told this point to the prosecutor's investigator.

**Analysis**

Evidence Code section 1108 authorizes a trial court to admit evidence of a defendant's prior sexual offenses as propensity evidence in a sex crime case when the evidence is not inadmissible under Evidence Code section 352. (Evid.Code, § 1108, subd. (a).) When determining whether evidence of prior sex offenses is prejudicial under Evidence Code section 352, " 'trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of

confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' (*People v. Falsetta* [ (1999) 21 Cal.4th 903,] 917.) The court's ruling under [Evidence Code] section 1108 is subject to review for abuse of discretion. (*People v. Story* [ (2009) 45 Cal.4th 1282,] 1295.)" (*People v. Loy* (2011) 52 Cal.4th 46, 61.)

We conclude the trial court did not abuse its discretion in admitting Sergio A.'s testimony. The testimony was probative and not unduly inflammatory. It was probative of defendant's propensity to groom and molest young men in their early teens, as he did with the victims here. And Sergio A.'s testimony was far less inflammatory than the victims' testimony of what defendant did to them.

The event of which Sergio A. testified was not so remote as to be irrelevant. Under Evidence Code section 1108, courts have admitted evidence of similar uncharged sex acts committed up to 30 years before the charged acts were committed. (See, e.g., *People v. Branch* (2001) 91 Cal.App.4th 274, 284 [30 years]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1393–1395 [between 15 and 22 years].) Six years is not too remote, particularly due to the similarities between defendant's actions against Sergio A. and the victims here.

The testimony also did not distract the jury or consume an undue amount of time. Sergio A.'s testimony takes up only 20 pages of the 954–page reporter's transcript.

Defendant complains Sergio A.'s testimony was unduly prejudicial because it was not corroborated by any other eyewitnesses, Sergio A. had a motive to lie because he believed defendant introduced his mother to drugs, Sergio A. never disclosed the incident until he learned about this case, and Sergio A.'s claim was never presented to a jury for determination. These issues go more toward credibility than admissibility and prejudice.

"The prejudice that [Evidence Code] section 352 ' "is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations]. "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" [Citation.]' [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the

substantial likelihood the jury will use it for an illegitimate purpose."
(*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009.)

Defendant has not demonstrated Sergio A.'s testimony was so inflammatory as to motivate the jurors to decide his case based solely on their emotional reaction to uncharged sex act evidence, or that the trial court's admission of the evidence was arbitrary or capricious. We thus conclude the court did not abuse its discretion admitting the evidence, and defendant suffered no loss of his due process rights.

*Lopez*, 2014 WL 5796683, at *8–10. Petitioner raised his sufficiency of evidence claims in a petition for review to the California Supreme Court which was summarily rejected. Lodg. Doc. No. 11 (Petition for Review); Lodg. Doc. No. 12 (Order Denying Review).

## 1. <u>Applicable Legal Standards</u>

The United States Supreme Court has not ruled on the question of whether admission of propensity evidence violates due process. *Estelle*, 502 U.S. at 75, n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). As such, there is no clearly established federal law addressing this issue. Habeas relief may still issue on this claim, however, if petitioner can show that the admission of these uncharged acts was fundamentally unfair and resulted in a denial of due process. *Id*. at 72. Constitutional due process is violated if there are no permissible inferences to be drawn from the challenged evidence. *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions." *Id*. at 920. "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).

## 2. <u>Analysis</u>

As noted above, there is no clearly established federal law proscribing the admission of propensity evidence. As such, he would be entitled to relief only if the jury could draw no permissible inferences from it. The Court of Appeal held that the testimony was "probative of

defendant's propensity to groom and molest young men in their early teens, as he did here."
*Lopez*, 2014 WL 5796683, at *9. The court finds that this was not an unreasonable determination and that such an inference would be permissible under federal law. *See Alberni v. McDaniel*, 458 F.3d 860, 863-67, 866 n.1 (9th Cir. 2006) (recognizing that the Supreme Court has not clearly established that the introduction of propensity evidence violates due process and that it has denied certiorari on the issue at least four times). Accordingly, petitioner is not entitled to habeas relief on this claim.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: November 16, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE